On the Merits.
Nicholls, O. J.
This suit was brought on September Ith, 1896, upon the joint petition of (1) William II. Bothick, (2) Mary Jane *1866 Bothick, wife of John Walters and of John Walters her husband, (3) Mathilda Bothick, wife of Lambert I. Franz and of Lambert I. Franz her husband, (4) Arabella Bothick, wife of A. L. Lag-ay and of A. L. Lag-ay her husband, (5) Lizzie Bothick, wife of M. Pitcher and of M. Pitcher her husband, (6) James D. Bothick, (7) Thomas B. Bothick, and (8) Jefferson D. Bothick, alleging themselves to be the children of Thomas W. Bothick, the two first named petitioners being children by his first marriage, and the other six children by his second marriage.
They allege that there was a seventh child of the second marriage, Anna J. Bothick, wife of John A. Solari, who had died leaving two minor children, John A. Solari, Jr., and Charlesia A. Solari, who were under the charge of their father, and natm'al tutor, John A. Solari.
That petitioners and the minors were the sole heirs of Thomas W. Bothick, and their share in his succession was one-ninth to the two minors, and one-ninth to each of the major heirs named.
That Thomas W. Bothick left a widow by his third marriage, Olivia T. Bothick, who, being the executrix of his last will and testament, had filed a final account and judgment had been rendered therein. That under the reservations contained in said judgment, and under the facts of the case, there were certain matters at issue to be settled between petitioners, the minors and the widow, to-wit:
1st. — Petitioners alleged that by act of donation, inter vivos, before Armstrong-, notary, on the 7th of July, 1877, their father donated to his said third wife two certain described lots on Dorgenois street, in the City of New Orleans; that said lots were worth at that time, and were still worth, twenty-five hundred dollars.
2nd. — That by act under private signature, executed in New Orleans on the 1st of May, 1896, he donated to his said wife two certain described lots in the City of Natchez, Mississippi; that at that time Bothick and his wife were residents of New Orleans, and delivery of said property was made to the donee; that they were worth at the time of the donation, 'and were still worth, the sum of fifteen hundred dollars.
3rd. — That during the settlement of the succession of her husband, Olivia T. Bothick purchased, at the succession sale, certain described real estate for the price of sixty-five hundred dollars; that she failed to take title thereto; that she was duly put in default; that she was ordered to 'take title by judgment of court, and thereafter the said *1867 property was sold at lier risk and expense; that at the second sale it brought the sum of four thousand, eight hundred and fifty dollars, being one thousand, six (hundred and fifty dollars less than the first adjudication, and the widow was responsible for said deficiency with the sum of one hundred and ninety-six dollars and five cents costs incurred in making said second sale.
4th. — That the Succession of Thomas W. Bothick had been closed, and said donations exceeded in value the disposable portion of his estate; that the community between him and Olivia T. Bothick was exhausted by its debts and expenses of settling his estate; that his widow had received since his death, in personal property and in money, a sum exceeding one thousand dollars out of said community, and there was nothing coming to her as widow in community, and the said property whidh was thus donated to her should be brought back in order that it might be divided among the legal heirs of Thomas W. Bothick.
5th. — That in the matter entitled Pickles vs. Fairrex, in the docket of the Civil District Court, by a decree of Division “D” of the court, the sum of six hundred and seventy-two 19-100 dollars was deposited with the clerk of the court to await the settlement of the estate of T. W. Bothick.
That said sum belonged to them and the minors, and they desired to divide the same.
6th. — That there was still unsold the following real estate property, the same being the separate property of Thomas W. Bothick and not in any way connected with the community between him and his surviving wife, to-wit:
1. A lot bearing the municipal number 1046 Magazine street.
2. The Natchez property, donated to the third wife.
3. The Dorgenois property, donated to the third wife.
7th. — That Thomas W. Bothick was an undertaker, and in the course of his business came into possession of several tombs or vaults for receiving and preserving bodies and not used for himself or his family.
That they had called upon Mrs. Olivia T. Bothick to return the property donated to her, and she had refused to do so.
That they were unwilling to remain any longer in indivisión with the widow and the minors, Solari; that they demanded a partition, and for that purpose a sale of the property, it being indivisible.
For further particulars as to the family of Bothick, and the various *1868 matters affecting its property, they referred the court to the different suits and records thereof in the court bearing upon the same.
In view of the premises, they prayed for the citation of Mrs. Olivia T. Bothick and the minors, Solari; that they have judgment against the former annulling and reducing the donations made to her, and that she return the same to the Succession of Bothick, and for judgment upon that issue as the-court would be competent to render; that she also be condemned to pay petitioners the sum of eighteen hundred and fifty-six dollars and five cents, with legal interest from judicial demand; that it be decreed that she has no interest of any kind in the community between herself and her husband; that it be adjudged that the community was debtor to the separate estate of Thomas W. Bothick for the debts paid out of his separate estates for its account, and in any event for such judgment as would adjust, settle and terminate the community in all of its branches, and that there be a -judgment of partition against all the defendants of the property and effects on such terms as the court should determine, and that the parties be referred to a notary to adjust and settle the accounts and complete the partition.
No appearance having been made for or on behalf of the minors, Solari, a judgment by default was taken against them and ultimately confirmed decreeing a partition. Mrs- Olivia T. Bothick answered. She pleaded, first, the general issue, then that there was certain property of T. W. Bothick which was still undisposed of, and which should be distributed to the heirs before any reduction of donations could be established.
3.| That as regards the property in Mississippi the plaintiffs were without capacity to sue; that said property being real was guided by the laws of Mississippi.
That her husband, in addition to the donations, made a will under which she is a legatee, and has a right under the will to said property.
That the succession was of considerable magnitude, and was frittered away by the plaintiffs in litigation, and they had no right to disregard the amount of the succession at the date of its opening in making a calculation of their rights, if any they had.
Judgment was rendered on May 27, 1897, in the case, dismissing, as of non-suit, the demand of the plaintiffs to collate the property in New Orleans on Dorgenois street, and the property in Natchez. The judgment further decreed a partition and division of all the property and *1869 effects then held in common between plaintiffs and defendants, partition to be made in kind of the money then in hand and on deposit and at sale by public auction by Green,'auctioneer, of the other property on terms cash for the movables and for the tombs and various cemetery lots owned by said parties, and on terms of one-third or more cash for the real property and the balance at one and two years credit with eight per cent, interest in so far as the real estate was concerned. It further ordered that the question of the liability of Mrs. Bothick for the difference in the adjudications and all other questions between the parties, plaintiffs and defendants, not passed on in the judgment, be reserved for discussion, settlement and adjustment upon the completion of the partition and upon a settlement of accounts.
The judgment further referred the parties to a notary public for the purpose of said adjustment and to complete the partition.
On the 80th of June, 1898, the children of Bothick (with the exception of the Solari minors) filed a petition in the partition suit which they had instituted on the 7th of September, 1896, .in which they referred to the claim therein made by them for the revocation or reduction of the donations made by Bothick to his wife, which had been dismissed as in case of non-suit. They then alleged that the partition decreed in said suit had reached the final stage, and that it was now definitely known-that the donations were far in excess of the disposable portion of the decedents’ estate and trenched upon the legitime reserved by law to petitioners. That the decedent, in his last will, left the disposable portion of his estate to his widow, and that the same was of no effect inasmuch as the donations alone exceeded the portion which, by law, the testator was permitted to dispose of.
That said donations exceed by more than two-thirds the sum of the values or amounts which deceased could dispose of by donations, inter vivos or mortis causa, to the prejudice of petitioners, and they should be revoked or reduced as the defendant might elect.
They prayed that the widow be cited, and that the donations, inter vivos and mortis causa, be annulled, revoked and reduced.
We find in the record a document addressed to the court by Joseph D. Taylor, the notary designated by it to make the partition, in which he stated that several conferences between the parties and their attorneys had taken place before him, at which nothing definite was suggested or decided, and that matters rested in this condition for a time; that sub *1870 sequently Mr. Loque, representing' the Widow Bothick, had presented to him a projet for a partition based on the rights of parties from his standpoint. That he, the notary, had submitted the same to the other parties in interest, and they, through their attorneys, had presented a counter projet based on their claim as to the rights of parties. That being himself unable to settle the ^matters involved, he forwarded the two projets to the court for its decision, and awaited instructions from the court.
The projet submitted by Mr. Louque was as follows:
Assets.
In the hands of the Civil District Court in the case of Prickles vs. Fairex, No. 26,099, of the docket of said court, $672.90.
Being the proceeds of the Fairex notes, which were community property- — one-half is Mrs. Bothick’s, $336.45.
Amount in the hands of John II. O’Connor, auctioneer, $623.45.
This amount is the balance on hand of the proceeds of sale of the following described properties sold by O’Connor, by order of court, and the proceeds were used to pay community debts as well as the separate debts of Mr. T. W. Bothick.
Total sales by O’Connor, and Mrs. Bothick’s share
No. 199 Terpsichore street — sold.............. $2700 00
One-half of which belonged to Mrs. Bothick, same being community property, to-wit...... $1350 00
Three lots on First street, sold for............ 406 00
Community, one-half Mrs. Bothick’s share.... 203 00
Lot on Lee Circle, or Tivoli Circle............ 2350 00
One-fourth is Mrs. Bothick’s share............ 587 50
Stables on Magazine street, sold for.......... 3950 00
One-fourth is Mrs. Bothick’s share............ 987 50
271 Camp street sold for...'..................4850 00
One-fourth is Mrs. Bothick’s share............ 1212 50
Second sale of movable property.............. 300 00
One-half is Mrs. Bothick’s share.............. 150 00
Camp street property sold for................ 2042 10
One-fourth is Mrs. Bothick’s share.......:.... 510 52
Fairex notes of $3500, on which has been paid $1800, leaving ........................... 1700 00
*1871 One-half is Mrs. Bothiek’s share.............. 6850 00
Total sales by O’Oonnor.................... 18,298 10
Total amount acruing to Mrs. Bothick out of sales by O’Oonnor......................... 5851 02
In order to ascertain Mrs. Bothick’s share in the $623.43, we proceed by rule of proportion and have $18,298.10 : $5,851.10 : : $623.43: x $5,851.02 x $623.43 — $209.21................ $209 21
$18,398.10
.Difference between the two adjudications' of 271 Camp street................................ $1600 00
One-fourth is Mrs. Bothiek’s share............ 400 00
Proceeds of lots on Magazine street............ 900 00
One-half is Mrs. Bothiek’s share — $450.00—less her share of the expenses of sale; one-half of one-half of $111.50 — $55.75 taken from $450.00 .................................. 394 25
Total amount for partition................... $3796 73
Total amount Mrs. Bothick’s share. ........... 1309 88
$1309 88
Amount for partition, less cost of.............. 2486 85
Courts $......... notary $........, 71-2 sale $55.75 and taxes on the Magazine street lots.. 200 75
Total assets of partition...................... 2286 10
Out of the sales previously made, Mrs. Bothick was entitled to............................ 5851 02
The whole of which went to pay debts indiscriminately of the Bothick community as well as the separate debts of T. W. Bothick.
In addition to the above amount, Mrs. Bothick was entitled to one-half of the bills collected by Drown, the same being community assets, to-wit:
W. H. Moon ............................... 175 00
Dr. N. Bailey.............................. 150 00
Mrs. McMahon ............................. 148 50
*1872 Alpha Lodge ................................ ISO 00
Harry II. Ivens ............................ 10 00
Carriage hire .............................. 20 00
Rent — Terpsichore property.................. 40 00
Sales — movables............................. 1517 75
Frantz bill — due............................ 50 00
St. John Lodge............................. 50 00
Mount Moriah Lodge........................ 89 00
Total ..................................... $2466 25
. One-half total Mrs. Bothick’s share.......... 1233 125
Total amount of community property belonging to Mrs. Bothick........................... 7084 145
Which would not only absorb the total assets. .. . 2286 10
But leave Mrs. Bothick a creditor of the heirs to the amount of.......................... 4798 04
Mrs. Bpthick owes of ordinary debts which were due at the dissolution of the community one-half the same being community debts........ 2473 33
Pescud Insurance........................... 125 30
Finley, $58.85, and Holcombe, $53.00.......... Ill 85— 2710 48
Amount being deducted from $4798.04 would leave her a creditor of the estate of T. W. Bothick for .............................. 2087 56
The balance of the debts were the costs of the interdiction of T. W. Bothick, and for his funeral expenses and costs of settlement of his succession, which are not community debts, but, nevertheless, have been paid with community assets, to-wit:
Paid by Drown — interdiction.......................’.......$427 00
Paid by Drown — medical experts........................... 250 00
Paid by Drown — Drown curator............................ 500 00
W. O. Hort, inventory for interdiction..................... 50 00
Bernau ..................................................250 00
Lombard, attorney — interdict.............................. 250 00
Bobb ...'................................................ 8 00
Funeral bill ............................................. 281 00
Costs ................................................... 40 00
Gurley, notary .......................................... 56 00
*1873 Appraisers .............................................. 70 00
Richardson & McConnell..................................3000 00
69 25
246 62
Total ..............................................i.. .$5809 80
For which amount of debts Mrs. Bothick is in no manner personally or through her property responsible. Deducting the community assets, the community debts, she still has a claim against the heirs of T. W. Bothick, to the amount aforesaid, of $2,087.04.”
In the record, immediately below the projet, are found the following words:
“This, and the three preceding, pages — four pages in all — I find to be a correct projet, approved by the interlocutory order and decree this day entered and signed New Orleans, La., July 5th, 1898.”
(Signed) T. C. W. Ellis,

Judge”

The projet submitted by Messrs. Dari & Whitaker, on behalf of the plaintiffs in the partition proceeding, was as follows:
1st. — The sum now in the judicial depositoijy, together with the sum in the hands of O’Connor, auctioneer, and the sum due by William H. and Mary Jane Bothick for the real .property heretofore sold, are the only active assets that we know of. These sums we propose shall be allotted to the children of Bothick, and nothing shall be given to Mrs. Widow Bothick, as she is a debtor to the estate.
We ask, also, that the notary find, as a fact, that Thomas W. Bothick donated to the Widow Bothick, by act before A. J. Armstrong, notary public, 7th of July, 1877, the two lots in the square bounded by Dorgenois, Broad, Canal and Customhouse streets, worth say $2500.00.
2nd. — That by act under private signature, 1st of May, 1886, said T. W. Bothick donated the lots known as lots 11,12 and 14, in Natchez, Miss., described as having a frontage of 130 feet on Rosalie street, by Í60 feet in deptjh* said lot forming the corner of Green and Rosalie streets, which property is worth $1500.00.
We ask that these two properties be figured in the estate, to show what was the disposable portion, and what portion of said donations said widow should return.
*1874 We ask that the widow be charged with $1650.00 — difference between the price of the sale of the property and the price it brought (referred to in the succession record).
That she further be charged with $1000.00 — money received and personal property taken by her since the death of Mr. (Bothick — for which she has not accounted. That she also be aisked to give up the titles to the various lots in the Girod Cemetery and other cemeteries referred to in the partition suit on file herein.
We are prepared to offer the proof of these donations whenever the notary wishes to receive them. •
(Dated) March 30, 1898.
(Signed) Dart & Kernan.
(Signed) John T. Whitaker.
Mrs. Olivia T. Bothick excepted to the demand for the reduction of donations on the ground that all the heirs had not been joined, and, 2nd, that no suit for reduction could be filed until ifiaintiffs had complied ith the judgment of the court ordering them to pay the two thousand dollars.
On the 5th of July, 1898, the court rendered judgment in the following terms: “This cause having been referred to us (by the notary for instructions, and the court being of opinion, as appears by the written reasons on file, that the projet of settlement and partition proposed by the attorney of Mrs. Bothick is correct on facts. It is ordered, adjudged and decreed, that Joseph D. Taylor, notary public, be ordered to complete the partition herein in accordance with the projet of settlement proposed to him by the attorney of Mrs. Bothick, according to law.
From this judgment the plaintiffs, in the partition proceedings, including the minors, Solari, through their tutor, appealed.
Opinion.
In appellants’ brief it is stated. “This case was decided on written reasons, which have been lost or mislaid by the clerk. * * * A motion to dismiss was made here to dismiss this appeal, and though your Honors found the record incomplete, you,, nevertheless, maintained the appeal. Since that.decision, many of the missing documents have been duplicated by office copies, and the record is now in condition to understand the issues.”
*1875 In appellants’ petition we are referred, for information concerning the Bothick fajmily, “to the record of the Succession of Thomas W. Bothick, on file in this court, and in the various suits which are reported in the archives.”
We have found that no less than four reported eases (43 Ann., 547; 44 Ann., 1038; 45 Ann., 1384; 47 Ann., 613) under that title have been brought up to this court, on different issues, with disconnected evidence scattered in different transcripts.
To come to a knowledge of the situation from what is contained in these records involved a labor which we do not think we were called upon to expend (Succession of Billington, 50 Ann., 974).
We, none the less, referred to these cases with the hope that through them we would find material which would eke out the last very defective record sufficiently to enable us to reach definite conclusions, but in this we have been disappointed. -We do not think matters are in such a shape before us to enable the court to render, with any degree of certainty, a judgment which would do justice between the parties. Had the reasons assigned by the district judge, for his judgment, not been lost, we would have been able to ascertain on what theory this case was tried.
We feel constrained, under the circumstances, to reverse the judgment and remand the case, with instructions to the parties to amend their pleadings, and set up, in a connected form and with distinctness, their respective claims and pretentions, and support the same by connected evidence, as best they may. The presumption being, in the absence of evidence, that property in existence at the dissolution of the community is community property, and debts due are community debts.
We have again to object to the bringing up of documents outside of the transcript. They are liable to be lost and mislaid.
The situation of the succession is such that these various claims should be passed upon by the District Court before the parties be referred to a notary, if such reference should in fact be necessary at all (Succession of Harrell, 12 Ann., 337).
We have alluded to the various suits in which various matters concerning Thomas W. Bothick and his family have been before this. From them we learn that Bothick lived in the years 1846, 1847, 1848 and 1849 in New York and New Jersey; that he came to New Orleans about 1849 or 1850; that from the time he came to New Orleans to the *1876 24tli of July, 1874, he lived with Ann J. Cunningham; that she was universally recognized as his wife, and was undoubtedly married to him; that children were born of this marriage; that Ann J. Cunningham died in 1874, and Bothick afterwards married Olivia Tyree, who survived him.
That during his residence in New York, he lived with Catharine Connelly as his wife. He abandoned her and came to New Orleans. In 1890 proceedings were instituted in the Oivil District Court asking and resulting in a judgment for the interdiction of Bothick. The petitioners were the children, issue of his marriage with Ann J. Cunningham, with the exception of John A. Solari, who married Annie J. Bothick, a predeceased daughter, and who appeared in the suit as tutor of his minor children.
In anticipation of a judgment of interdiction, the plaintiffs united in a prayer that one of the sons, either Thomas B. or J ames W. Bothick, be appointed curator, and that Solari be appointed under curator. In their petition plaintiffs alleged that the wife had obtained complete control of her husband, and had succeeded in causing him to make certain donations to her, which should be annulled.
In anticipation of her making a demand for the curatorship, they averred that her actions had been stfch that she should be denied that right.
The husband and wife were made defendants.
As had been expected, Mrs. Bothick made a claim for the curatorship. The litigation became a very bitter one. The District Oourt appointed the wife euratrix.
The plaintiffs appealed, and upon the appeal the judgment appointing Mrs. Bothick euratrix was reversed, hut otherwise affirmed appellee to pay costs.
The court held that the curator should be appointed upon the advice of a family meeting.
On the return of the cause a family meeting was convoked, and, at its instance, Charles W. Drown, then sheriff of the Parish of Orleans, was appointed as and qualified as curator. All the plaintiffs appealed, but the judgment was confirmed on appeal (44 Ann., 1042).
In 1893 William Henry Bothick and Mary Jane Bothick instituted a suit (45 Ann., 1042) to have the court recognize that Thomas W. Bothick and Catherine Oonnelly had been husband and wife, and that *1877 the plaintiffs therein were the legitimate issue of that marriage. They obtained a judgment to that effect which, on appeal, was affirmed.
It seems that in the interval between Bothick’s arrival in New Orleans and the death of Oatherine Connelly, he had 'purchased certain real estate in New Orleans, which was sold by him in effecting a settlement with the children, issue of his marriage with Ann J. Cunningham. Thomas W. Bothick died on the 24th of December, 1892, leaving a will in which it W'ould appear he left to his third wife, Olivia Tyree, the disposable portion of his estate, and appointed her as his executrix.
The will was probated; she qualified, and later, as such, filed an account.
William Henry Bothick and Mary J. Bothick filed an opposition to this account, seeking to recover from the estate of ijheir father one-half of the community between him and their mother at the date of her death, and also to recover, as heirs of their father, one-half of his succession, alleging the nullity of the will in so far as it trenched upon their rights as forced heirs, and charging the illegitimacy of the children of Bothick and Ann Cunningham. They also claimed that certain lots of ground in New Orleans, and certain property in Natchez, which had been donated by Bothick to his wife, should be placed upon the inventory and held subject to collation.
Instead of following the property which Bothick had alienated in making the settlement with his children by the second miarriage, into the hands of the purchasers and claiming the undivided half thereof, the children of the first marriage claimed that by said sale a resultant trust had been created in their favor in any immovable property since acquired by him, by reason of the accumulation and accession of means in his hands, through said sales, to make new 'purchases, and that said property so acquired became by reason of his being their negotiorum gestor or trustee, charged with the return of said property in kind with the revenues or the equivalent in other immovable estate, unencumbered by any debts created by Bothick, since the death of their mother.
These pretensions were denied, and it was contended that if they had a claim of any kind against their father, it was one for money, and, as against such a claim, prescription was pleaded. The defense in this branch of the case was sustained, and plaintiffs demand rejected, but judgment was rendered in their favor annulling the will in so far as it might trench upon their legitime.
*1878 Drown, in the meantime, seems to have rendered an account as curator, and was dicharged. The executrix filed an occount in which she charged herself with the -amounts which she had received, and credited herself with the amounts paid out and to be paid.
The account showed a small balance in favor'of the estate, it was homologated and the executrix discharged.
This account was not framed in such a manner as to afford a basis on its face for a settlement of the rights of the widow and heirs inter se.
It was prepared upon the theory that whether the debts shown by the account were separate debts of the deceased or debts of the community, in either event the deceased would, quoad the creditors, be liable for the whole amount.
There was no attempted classification of the properties sold into community or, paraphernal, no classification, as just stated, of the debts as separate and community debts, and no showing made as to how far the proceeds of paraphernal property had been applied to the payment of community debts, or the proceeds of community property had been applied to the payment of separate debts,- and the court is uninformed by the record upon this subject.
The filing- of the account in so far as it went to make an exhibit ¿f the general status of the succession, as to creditors aind as to the appli cation by the executrix of the funds of the succession for that purpose, was an act proper and necessary to be done prior to the discharge of the executrix, but it left the rights of parties, inter ;se, to be thereafter fixed and determined.
It was a closing act of an administration, but an opening act for a partition. It was then that the widow and heirs were placed in a position to ascertain what would be their relative rights. Mrs. Olivia Rothiek occupied different positions in,the matter of this succession, which have to be kept distinct. She was the wife and surviving widow in community of the deceased; she was, during the marriage, by donations inter vivos, his donee of particular pieces of property; she was a legatee under his will, and she was, finally, the executrix of his estate. Her rights in each relationship differ, and her situation as to each has to be ascertained and fixed. Her rights as widow in community have to be determined by the status of the community; her rights as legatee are dependent upon the sitiration of her husband’s succession made up of his separate property, and the portion of the community falling to him upon *1879 the adjustment of the community; and upon the results of these two liquidations and settlements will rest the fact whether her position as a donee would be affected or not, and, if affected, to what extent it would be so. (Bartoli vs. Hugenard, 39 Ann., 417, 418; Succession of Moors, 40 Ann., 531; 42 Ann., 333).
Reference is made several times in the briefs to her liability to collate the property donated to her, but there is no question of collation in the case, though there might be under certain circumstances and conditions, a question of reduction, and for the determination of that issue a consideration of the values of those properties (C. C. 1505). (Succession of Moore, 40 Ann., 531; 42 Ann., 333).
We are not certain, from the evidence, whether the property donated to her was separate property of her husband; partly separate and partly community, or entirely community property.
Counsel of Mrs. 'Bofhick argues several propositions from the standpoint of the community of acquets and gains between her and her husband having been brought to an end by the interdiction of the latter, but this position is untenable. (See Hotard vs. Hotard, 12 Ann., 145; Laurent, Vol. 22, Secs. 230, 231 and 232). Counsel announces, as an invariable rule, that the costs of the proceedings taken for the interdiction during marriage of a husband, which terminate ib. a judgment for the plaintiff, is a debt due by the separate estate of the husband, and he cites Article 387 of the Civil Code in support of that position, but this court held otherwise in interdiction of Leech, 45 Ann., 197.
The rule, subject to special exceptions and modifications, is, that these costs are a community debt. They accrue during the marriage and fall under letter of Article 2403 of the Civil Code. The husband being head and master of the community, it is specially to the interest of the community that a personal administration which might ruin it should be brought to an end. The law makers, in enacting Article 397 C. C., were evidently providing for cases of interdiction generally, and were not considering the question as between the separate estates of the husband and the community. Exceptional cases have frequently to; be read out of and excluded from broadly written law, because if so enacted by the legislators, it was, as Mareade says, ‘‘evidemment pareeque ils so sont preoccupes des cas les plus ordinaires.”
Counsel of appellee asserts it to be a general rule that the costs of the settlement of a succession haver to be borne by the husband’s succession, *1880 but the Succession of Webre, 49 Ann., 1491 and Sims vs. Billington, 50 Ann., 976, announce a different rule.
For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court be, and the same is hereby avoided and reversed, and this cause is remanded to the District Court for further proceedings, according to law, with leave granted to the parties to amend their pleadings. Costs of appeal to be borne by the appellee.
Rehearing refused.
Monroe, J., takes no part.